Judgment reversed, and a <em>venire de novo</em> awarded.

KEIL v. WOLF.

A judgment confessed by an executor to A. & B.his wife, for the sole and separate use of B., is <em>prima facie</em> evidence that the debt was due to the <em>feme covert</em>, and hence within the saving clause of the act of 1797.

CERTIFICATE from the Nisi Prius.

*March* 18. The question in this case was, whether the judgment, under which the sheriff's sale was made, was a lien on the land—the other points having, by the decision of that point, become immaterial. The plaintiff claimed in ejectment under John Miller as his *admr. de bonis non*. By his will in 1805, Miller had devised half of his estate to his brother and sisters, and the residue " to my wife; if she shall marry again, to dispose thereof as she may think fit." He further authorized his executors to sell the land at the death or intermarriage of his wife for the purposes of making partition, and appointed his wife, Catherine, and two others, executors. The testator died in 1813.

The defendant claimed under a judgment in 1822, confessed in an amicable action, wherein the plaintiffs were " John Ulrick and Mary his wife, for the sole and separate use of the said Mary," against Catherine and another, surviving executors of John Miller, the testator. This judgment was revived by *sci. fa.* and the property sold to Wolf, the defendant, in 1825.

He proved that John and Mary Ulrick, then a widow, were married in 1800; and that, shortly before the death of John Mil-

ler, Mary Ulrick had lent him money, and was also the holder of a note endorsed by him for a loan to one Rinker. This evidence was objected to because it had not been shown that she had a separate estate.

The purchase-money was shown to have been distributed by the court.

His honour, BURNSIDE, J., instructed the jury that, if this was the debt of Mary Ulrick, she being a *feme covert*, it was within the exception of the act of 1797. That the form of the action was some evidence of that fact, and, as her husband had so treated it on the record, in the absence of fraud and of all other evidence, they were bound to treat it as her debt.

*Brightly*, for plaintiff in error.—The act of 1797 declares that no debt due by a decedent shall be a lien on his land unless an action was commenced within seven years. The construction, as settled by the court, is, that the right of satisfaction is gone : Bailey *v.* Bowman, 6 Watts & Serg. 118 ; Seitzinger *v.* Fisher, 1 Watts & Serg. 293. It is true there is a reservation of debts due *femes covert*. But there was really no evidence of that fact here. The parol testimony proved she loaned the money ; but it became a debt due to the husband. Her possession prior to the loan was his, and there is no pretence of a settlement. The mere form of naming the plaintiffs amounts to nothing, as that could not create a new right, and to hold it evidence of a prior right is to enable executors to defraud the estate at pleasure.

*Mann*, contrà.—Fraud is not to be presumed, nor was there any occasion for it ; for the settled rule at that day was, that the lien only was gone, not the right of satisfaction : Bruch *v.* Lantz 2 Rawle, 392. Besides, who was she defrauding ? She had a fee-simple in one-half of the estate, contingent, if not absolute, and a life-estate certainly.

These facts are most material, and, taking them in connection with the proof of a loan by the wife and the action in her name, it is not too much, at this late day, to throw the burden of disproving the presumption from the record upon the party now seeking to avoid so ancient a sheriff's sale.

*March* 28. BURNSIDE, J.—In this judgment, both parties claimed under John George Miller. His last will and testament was duly proved on the 20th of May, 1813. The material ques-

tion in the case arises on bills of exceptions to evidence to show that Mrs. Ulrick, a *feme covert*, was the *bonâ fide* owner of the judgment on which the property was sold to the defendant; and on the plaintiff's prayer for instructions to the jury that the sheriff's sale was void, and did not pass the estate of Miller to Wolf, the defendant.

The amicable confession of judgment was on the 27th March, 1822, by Catherine Miller, surviving executrix, and John Adolph, surviving executor of John George Miller, to John Ulrick and Mary, his wife, for the sole and separate use of the said Mary in the sum of $1424 44. On this judgment, the property in question was levied and sold by the sheriff of the city and county of Philadelphia to Wolf, the defendant, on the 5th October, for $3155, and a deed duly acknowledged on the 18th of October, 1825. The money was ruled into court, an auditor appointed, and distribution duly made. There was some evidence that the heirs in Germany recovered the balance of the purchase-money after the satisfaction of the judgments against the estate; but that point is rendered immaterial, as the plaintiff rested his case in the Nisi Prius, on the point that the debt under which the land was sold had ceased to be a lien on the premises in the hands of the executors, by virtue of the fourth section of the act of the 5th April, 1797, 3 Smith's Laws, 298, and relied on the case of Bailey *v.* Bowman, as conclusive in his favour.

The counsel of the defendant relied as well on the heirs in Germany recovering the proceeds of the sale as the proviso to the section before recited: that is, provided always " *That a debt due and owing to a person, who at the time of the decease of such debtor is a feme covert, shall remain a lien on the said lands and tenements,* (notwithstanding the said term be expired,) until four years after discoverture. Evidence was given of the marriage of John Ulrick, widower, with Mary Warner, widow, on the 6th March, 1800. Ulrick was living when the judgment was obtained.

Elizabeth Gladding gave evidence, to which exceptions were taken on the trial, that she knew Mary Warner—she had three husbands; that Mrs. Ulrick lent money to Mr. Miller when he was going to build; she was at Miller's house the day he took sick : she deposited the money with him for safe-keeping, being afraid of robbers. Miller said he took the money and bought the ground-rent; said he might as well pay the interest to her as the ground-rent to the landlord. The ground-rent was shown to be extinguished on the 8th April, 1813. It was further offered to prove

the declarations of the executrix, Catherine Miller, who was a devisee, as to her late husband borrowing the money from Mrs. Ulrick, to which the plaintiff excepted. The witness stated Mr. Miller had borrowed money from Mrs. Ulrick to build the house. She did not know the amount. When he, Miller, had made up the money to pay it, Captain Rutter wanted to borrow it; Mrs. Ulrick was not willing to lend him the money. Mrs. Miller said Captain Rutter gave his note to Mrs. Ulrick, and Miller endorsed it. These two debts were unpaid when Miller died, and the house was sold for them. Mrs. Miller lived in the house after her husband's death.

These points were answered together, and the jury instructed that the proviso in the act of 1797 did not designate any particular kind of debt due to a *feme covert*. All debts and claims of a *feme covert* were protected from the limitation, as if the act had never been passed, until the exception in their favour ran out. That the husband, as well as the record, treated the proceeding as if it was her debt; the form of the action was some presumption of that fact. The court sees no error either in admitting the evidence of Mrs. Gladding, or in the answers of the court to the points.

We must bear in mind that this was an old transaction; all the parties to it are dead. The creditors of John Ulrick are complaining. The evidence was clear that John Ulrick never reduced this money into possession, or the evidence of it. We recognise the principle in Pennsylvania that a married woman may acquire a separate property in money or chattels, either by the gift of a stranger or of her husband: Rogers *v.* Fales, 5 Barr, 157. Such gift must not be made at the expense of creditors. It has been held that, when a wife having real and personal property married, and some days after the marriage the husband gave her a certificate stating he had borrowed of her a certain sum, for which he promised to pay her interest annually, in a case between the wife and the representatives of the husband, this paper furnished sufficient evidence that he held the money as trustee for the wife, and not in his own right: 5 Whart. 138.

These points being decided against the plaintiff, he is left without a foot to stand upon.

The judgment is affirmed.